Filed 09/03/24

VERMONT SUPERIOR COURT

Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT 05819
802-748-6600
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-01144

---

George Woods, Jr. v. Vermont Department of Corrections

---

## FINDINGS AND ORDER

This is an appeal that arises from a case staffing determination by the Vermont Department of Corrections. The basis for Appellant Woods' appeal is that while many of the facts underlying the interrupt are true, there are several that are incorrect, including his participation in substance abuse treatment programs, and that when all of the facts are viewed in the larger context of his efforts to stay sober and seek mental health treatment, it mitigates to a shorter interrupt.

The present appeal is governed by 28 V.S.A. § 724 and V.R.C.P. 74.

For the reasons outlined below, Appellant Woods' appeal is **Denied**.

### Background Facts

The facts of this matter are largely uncontested. The Department released Woods on community supervised furlough on or around August 21, 2023. This release came after a prior 180-day interrupt arising from an incident in October of 2022, which were the subject of a prior furlough appeal, which can be found at Docket No. 22-CV-3890.

Appellant's release was initially conditioned on his securing housing, which he did with the Barre Community Justice Center. As part of his furlough, Appellant agreed to several terms and conditions, which were updated on January 4, 2024 and included the following:

A) To follow all Barre CJC's housing program rules.

B) To abide by a curfew defined as 8:00pm to 6:00am.

C) Condition 12, which stated: "I will not enter or inhabit a residence my supervising officer has denied based on risk to the public and/or my victim(s)."

Under this last condition, Appellant's probation officer directed Appellant not to go to or stay at his ex-wife Rebecca Wood's house. While Appellant and his ex-wife have an on-going relationship, she was the victim of the assault on which Appellant's current sentence is based, and the two have a history that has involved relief from abuse petitions and issues with violence.

Appellant struggled with his initial transition from the correctional facility to furlough. In early October 2023, Appellant self-reported a relapse into drug use to his probation and parole as well as his housing coordinator. Based on the testimony that Appellant provided at the hearing through Paul Brodie, a licensed drug and alcohol counselor, Appellant began seeking treatment for his addiction in late October/early November and continued with Brodie until his re-incarceration in January. Shortly after, this relapse, Appellant also began attending recovery coaching sessions with John Reese, a recovery coach with Turning Point. Both Reese and Brodie testified that Appellant was actively participating in these recovery programs, but both witnesses clarified that they were not mental health practitioners, and the programs were not mental health treatment programs but were focused on substance abuse treatment.

Appellant freely admits that he did not regularly seek mental health treatment before January 2024 when his mental health began to deteriorate. Appellant testified that he saw a mental health counselor up and until October, but that he switched to Brodie because he wanted a male approach to his treatment. Appellant claims that he did not realize that Brodie was only a substance abuse counselor and not a mental health counselor. The Court does not find this testimony credible. Both Brodie and Reese were upfront about their scope of practice, and the Court finds that Appellant, who is intelligent, would quickly recognize that he was receiving only substance abuse treatment and not the larger mental health counseling and support that he appears to need.

Appellant's mental health began to deteriorate during the following January. On January 17, 2024, Appellant reported to his probation officers and housing coordinator that he was not taking his prescribed medication. By January 19, 2024, Appellant's mental health appears to have deteriorated as he was becoming uneasy with his housing and the "energy" it was projecting. He reported feeling unsafe and uncomfortable in the building. His complaints included certain physical manifestations associated with this growing anxiety. At that time, Appellant's probation officer re-stated that he was not permitted to visit or stay at his ex-wife's house.

Shortly after this meeting, Appellant left the Barre CJC housing facility. He contacted his ex-wife who picked him up and allowed him to return to her home where he stayed for the weekend. As a result, Appellant violated his curfew on January 20th and 21st and Condition 12 as well as the rules of his CJC housing.

On Monday, January 22, 2024, Appellant communicated to his probation officers that he had violated his curfew and Condition 12 by spending the weekend with his ex-wife. The probation office also received a letter from the Barre CJC informing the office that it had terminated Appellant's housing agreement. Appellant's probation officers directed Woods to come to the probation office, which he did voluntarily. After some conversation, the office placed Appellant into custody, and he was returned to the facility.

At all times, Appellant has been open with the fact that he violated the conditions of his furlough and spent the weekend of January 20th with his ex-wife. Appellant states that due to his mental health he felt compelled to go to his ex-wife's house where he felt safe. Appellant blames the probation office for failing to connect him with a mental health provider, and he feels that his decision was justified in the context of his condition. Appellant's location were confirmed by his GPS tracking unit, which Appellant kept charged and on his person the entire weekend.

On March 6, 2024, the Department conducted a case staffing determination and found that Appellant George Woods was ineligible for furlough for the remainder of his current sentence under Department Policy Directive 430.11 based on a variety of factors, including: (1) Appellant's high risk score on the ORAS (Ohio Risk Assessment System); (2) the fact that this was Appellant's second significant violation; (3) Appellant had demonstrated a pattern of risk-related behaviors; (4) previous interventions have failed to mitigate the risks; (5) the Department can no longer adequately control Appellant's risk to reoffend; and (6) that he poses a danger to others. (Administrative Record at 4.)

**Standard of Review**

The present appeal is a de novo review of the Department's case staffing record. 28 V.S.A. § 724(c)(1). By statute, the Court's review is limited to "determine whether the decision to interrupt or revoke an offender's community supervision furlough status was an abuse of discretion by the Department . . . ." Id. at (c)(2). An abuse of discretion in the decision to revoke or interrupt furlough is presumed for any period greater than 90 days for a technical violation unless:

> (A) The offender's risk to reoffend can no longer be adequately controlled in the community, and no other method to control noncompliance is suitable.
>
> (B) The violation or pattern of violations indicate the offender poses a danger to others.
>
> (C) The offender's violation is absconding from community supervision furlough. As used in this subdivision, "absconding" means: based on the criteria set forth in subdivision (d)(2) of this section.

28 V.S.A. § 724(d)(2).

In this case, the Department has not sought to dismiss the complaint as a non-technical violation constituting a new crime as defined in Section 724(d)(1). Nor is there evidence to suggest an absconding charge under Section 724(d)(2)(C) as that term is defined under 28 V.S.A. § 722 (1). Instead, the sole question on appeal is whether the record supports the factual basis for the furlough revocation under the provisions of Section 724(d)(2)(A) and (B).

## Legal Analysis

There is no factual question as to whether Appellant violated the terms and conditions of furlough. As noted above, the evidence shows Appellant violated three conditions of this furlough: (A) abiding by Barre CJC house rules; (B) following his curfew; and (C) staying away from his ex-wife's house and property.

There is also sufficient evidence that the probation sought to impose several intermediate methods to control compliance leading up to these violations. These included: (1) a meeting at the beginning of January 2024 to review and revise Appellant's furlough terms; (2) the use of a GPS device; (3) repeated warnings to Appellant not to stay with his ex-wife; (4) initial connections in August with a mental health specialist; (5) prior efforts to engage Appellant in domestic violence counseling; (6) increased supervision and more frequent meetings with probation staff; and (7) efforts with Appellant to help him develop a plan to address panic attacks and crisis moments where he could establish alternative transportation and meeting places where he could be compliant.

The record also shows a number of mixed actions on the part of the Appellant. On one hand, Appellant ended his mental health treatment in the fall of 2023 as he ramped up his substance abuse treatment. He was unable to find regular employment. He stopped taking medication that he had been prescribed. He waited until he was at a crisis point before contacting Copley Hospital or making any serious effort to obtain mental health support. On the other hand, there is evidence that Appellant kept his GPS charged and intact. Appellant also reached out to a number of mental health providers over the January 21st weekend and sought emergency housing. The record shows that Appellant tried to stay in contact with his probation office and voluntarily complied with direction to come to the office.

If Appellant's furlough revocation was based solely on his mental health issues, the Court would be inclined to side with him in this matter. Appellant has long-terms struggles with mental health and substance abuse, and he acted in a reasonable manner in the fall of 2023 when he prioritized

his substance abuse dependency after a relapse over his mental health that appeared to be stable. In this case, however, any stability with his mental health in the fall of 2023 proved short-lived. Nevertheless, the evidence shows Appellant struggling and engaged with his issues and making active efforts to address his substance abuse issues.

The central issue in this case, however, is Appellant's continued contact and reliance on his ex-wife. While there is evidence that Ms. Woods continues to care for Appellant and is willing to provide support, the record also shows that when Appellant's substance abuse or mental health issues are unchecked that she is the likely victim of his anger and outbursts.[1] This may simply be a matter of proximity, but it may also bespeak a deeper issue.

From the beginning of Appellant's most recent furlough, the Department made a determination that his contact with Ms. Woods needed to be monitored and limited. That this was the best way to keep Ms. Woods safe from an outburst or triggering event, which given Appellant's history was possible and highly likely. His probation and parole team has repeatedly set clear limitation on Appellant's contact with Ms. Woods, and the evidence is that Appellant has resisted these conditions and has pushed for contact with Ms. Woods.

The Department has discretion to set the terms and conditions of furlough release. 28 V.S.A. § 723(a)(3) (inmate must agree "to comply with such conditions of supervision the Department, **in its sole discretion**, deems appropriate for that person's furlough.") (emphasis added); see also *Geraw v. Vermont Dep't of Corrections*, Dckt. No. 21-CV-2443, 2022 WL 1242686, at *2 (Feb. 7, 2022) (Mello, J.).

On appeal, the Court is not in a position to second guess the imposition of such conditions as they reflect an individualized process that the Department, within the delegated authority, has applied to determine the best way to keep an individual on furlough in compliance and members of the public safe. It may be that there are other, less restrictive terms that could be applied, and it is possible that reasonable minds could disagree about these terms. It is also possible, as it appears in this case, that the individual intended to be protected disagrees with the terms and would also be more comfortable with less restrictive terms. None of this, however, is subject to review, and ultimately, it rests with the Department to set the terms and conditions. This is because the Department's charge is larger than any one person's individual input, and they are the sole purview of the Department to determine and

---

[1] Appellant's underlying convictions involve domestic abuse against Ms. Woods, and the Administrative Record indicates that this violence, while not continuous, has continued to crop up between Appellant and Ms. Woods.

impose. For the purposes of the present review, these objections or alternatives do not give valid grounds to challenge the findings that an individual violated the terms and conditions of their furlough or the consequences imposed for such.

In this case, the evidence shows that Appellant violated three furlough conditions. These violations came after probation and parole took several intermediate steps to correct and re-direct Appellant's behavior. As a result of these violation, Appellant lost his housing and was left in a situation where he was likely to be more dependent on Ms. Woods, and that the likelihood of further violations had only increased.

In reviewing Appellant's testimony, the Court finds that one of the central problems is that Appellant has a deep connection and reliance upon Ms. Woods. It is apparent that if one of Appellant's furlough conditions is that he keep some distance between himself and Ms. Woods, it is very likely that this condition will be violated.

In light of these facts and conclusions, the Court concludes that the Department did not abuse its discretion from determining that Appellant had a risk to reoffend that could no longer be adequately controlled in the community and no other method to control non-compliance was suitable (Section 724(d)(1)), and that Appellant had demonstrated a pattern of violations that indicate he poses a danger to others (Section 724(d)(2)).

Appellant is scored as a high-risk offender, and this is his second substantial offense within a year. Under the provisions of Department Policy 430.11, the appropriate furlough interrupt is two years. Given that Appellant has less than that time left in his sentence, the Department determined that the appropriate sanction was a determination that he should remain ineligible for furlough for the remainder of his sentence. The Court finds no abuse of discretion in this determination as it is in compliance with the Department's Policy and the provisions of 28 V.S.A. § 724.

## ORDER

Based on the foregoing, Appellant Wood's appeal is **Denied.** The furlough interruption is **Affirmed.**

Electronically signed on 9/2/2024 1:51 PM pursuant to V.R.E.F. 9(d)

Daniel Richardson
Superior Court Judge

Electronically signed pursuant to V.R.E.F. 9(d)

John S. Hall

Assistant Superior Court Judge

Electronically signed pursuant to V.R.E.F. 9(d)

Merle L. Haskins
Assistant Superior Court Judge